[Cite as *Crown Hill Cemetery Assn. v. Maxfield, Dir., Ohio Dept. of Commerce*, 2020-Ohio-3433.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Crown Hill Cemetery Association, c/o Corporation Service Company, Statutory Agent et al., | : | |
| | : | |
| | : | No. 19AP-651 |
| Plaintiffs-Appellees, | : | (C.P.C. No. 18CV-6864) |
| v. | : | (REGULAR CALENDAR) |
| [Sheryl Maxfield] in her official Capacity as Director, Ohio Department of Commerce et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on June 23, 2020

**On brief**: *Taft, Stettinius & Hollister, James D. Abrams*, and *Jonathan N. Olivito*, for appellees.

**On brief**: *Dave Yost*, Attorney General, *Benjamin M. Flowers, Michael J. Hendershot*, and *Shams H. Hirji*, for appellants.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Sheryl Maxfield, Director, Ohio Department of Commerce ("ODC"); Anne M. Petit, Superintendent, Division of Real Estate and Professional Licensing, Ohio Department of Commerce; and Ohio Cemetery Dispute Resolution Commission, defendants-appellants, appeal from a judgment of the Franklin County Court of Common Pleas in which the court granted the motion for summary judgment filed by Crown Hill Cemetery Association ("the Association"), Cemetery Management Services of Ohio, LLC

("CMS"), and StoneMor Partners LP ("StoneMor"), plaintiffs-appellees (collectively "Crown Hill").

{¶ 2} The Association owns a cemetery and is the trustor of the Endowment Trust. StoneMor is a foreign limited partnership. CMS is a subsidiary of StoneMor and provides the Association with management services. R.C. 1721.21, which applies to cemetery associations, requires cemetery owners to establish and maintain a cemetery endowment care trust ("cemetery trust") to provide for long-term maintenance of the cemetery via a perpetual stream of income. To this end, R.C. 1721.21(J)(2)(c), which took effect September 22, 2000, prohibits the trustees of cemetery endowment care trusts from withdrawing principal or capital gains. Pursuant to R.C. 1721.21(I), only interest and dividend income may be withdrawn, and such may be used only for the cost and expenses of maintaining the cemetery.

{¶ 3} R.C. 5812.46(B), which is a part of the Uniform Principal and Income Act included in the Ohio Trust Code effective January 1, 2007, applies to every Ohio trust and provides: "[a] tax required to be paid by a trustee based on receipts allocated to principal shall be paid from principal." Thus, because capital gains are allocated to principal under R.C. 5812.24(B), capital gains form part of the principal that R.C. 5812.46(B) requires trustees to use when paying capital gains taxes.

{¶ 4} In June 2017, Crown Hill submitted a registration renewal application with ODC and indicated it had twice withdrawn principal from the trust to pay the federal and state capital gains taxes of the trust. ODC advised Crown Hill that it was not permitted to pay capital gains with the principal from the trust pursuant to R.C. 1721.21(J)(2)(c). Crown Hill claimed that it was required to pay the capital gains tax from the trust's principal based on R.C. 5812.46(B).

{¶ 5} On August 10, 2018, Crown Hill filed a declaratory action and request for injunctive relief against appellants, seeking a declaration that it was permitted to pay the capital gains taxes using the trust's capital gains from the principal and enjoining ODC from referring the matter to the local prosecutor or Ohio Attorney General before the trial court decided the action.

{¶ 6} On April 12, 2019, Crown Hill filed a motion for summary judgment arguing that R.C. 5812.46(B) required it to pay the capital gains taxes from the trust's principal.

On May 3, 2019, appellants filed a cross-motion for summary judgment arguing that R.C. 1721.21(J)(2)(c) prohibited Crown Hill from paying the capital gains taxes using principal from the trust.

{¶ 7} On August 29, 2019, the trial court issued a decision and entry in which it granted Crown Hill's motion for summary judgment and denied appellants' motion for summary judgment. The trial court found that R.C. 5812.46(B) was the more specific and recently enacted statute and applied to all trusts with no exception for cemetery trusts. The court found R.C. 5812.46(B) was narrow and specifically referred to trust income taxes and how trusts must pay taxes based on receipts allocated to principal. The court further found that, on the other hand, R.C. 1721.21(J)(2)(c) only generally addresses the establishment, management, and operation of cemetery endowment care trusts, and does not specifically legislate cemetery trusts. The court concluded that, as the more specific and more recently enacted statute, R.C. 5812.46(B) controlled the payment of capital gains taxes by a trust. Therefore, the court determined that R.C. 5812.46(B) permitted Crown Hill to have the trustee pay capital gains taxes from the proceeds of the capital gains, and Crown Hill was entitled to summary judgment. Appellants appeal the judgment of the trial court and assert the following assignment of error:

> The trial court erred in holding that R.C. 5812.46(B) permits the plaintiffs, who are the owners and operators of a cemetery-endowment-care trust, to pay capital-gains taxes using the trust's principal or its capital gains.

{¶ 8} Appellants argue in their assignment of error the trial court erred when it granted Crown Hill's motion for summary judgment. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832,

¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 9}    When seeking summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293.  If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 10}   We begin by setting forth the statutes pertinent to this case.

{¶ 11}   R.C. 5812.52 provides:

> Sections 5812.01 to 5812.51 of the Revised Code apply to every trust or decedent's estate existing on January 1, 2003, except as otherwise expressly provided in the will or terms of the trust or in sections 5812.01 to 5812.51 of the Revised Code.

{¶ 12}   R.C. 5812.24(B) provides:

> A trustee shall allocate to principal all of the following:
>
> * * *
>
> Money or other property received from the sale, exchange, liquidation, or change in form of a principal asset, including realized profit, subject to sections 5812.18 to 5812.38 of the Revised Code[.]

{¶ 13}   R.C. 5812.46(B) provides:

> A tax required to be paid by a trustee based on receipts allocated to principal shall be paid from principal, even if the tax is called an income tax by the taxing authority.

{¶ 14} R.C. 1721.21(J)(2) provides:

Every cemetery required to establish and maintain an endowment care trust shall ensure each of the following:

* * *

(c) That all principal and capital gains have remained in the endowment care trust[.]

{¶ 15} R.C. 1.51 provides, in pertinent part:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

{¶ 16} In the present case, appellants argue that because R.C. 5812.46(B) and 1721.21(J)(2)(c) conflict with respect to whether principal or capital gains may be removed and used to pay capital gains taxes from the trust, R.C. 1.51 requires the court to give effect to the special provision, R.C. 1721.21(J)(2)(c), over the general provision, R.C. 5812.46(B). Appellants assert that R.C. 1721.21(J)(2)(c) is the specific provision because it governs the withdrawal from cemetery trusts, whereas R.C. 5812.46(B) is general, in that it applies generally to all trusts. Furthermore, appellants argue, the exception in R.C. 1.51 does not apply even though R.C. 5812.46(B) was adopted after R.C. 1721.21(J)(2)(c) because the General Assembly did not manifest any intent to have it prevail over the specific provision, R.C. 1721.21(J)(2)(c).

{¶ 17} Crown Hill counters that because R.C. 5812.46(B) specifically addresses the payment of taxes out of the principal of trusts, and R.C. 1721.21(J)(2)(c) is a criminal statute that does not address the payment of taxes but only withdrawals from principal generally, R.C. 5812.46(B) is the specific provision and R.C. 1721.21(J)(2)(c) is the general provision. Thus, according to Crown Hill, R.C. 1.51 dictates that 5812.46(B), as the specific provision and later enactment, must prevail over the general provision, R.C. 1721.21(J)(2)(c).

{¶ 18} Initially, we find R.C. 5812.46(B) and 1721.21(J)(2)(c) conflict. R.C. 1721.21(J)(2)(c) requires that all principal and capital gains remain in the cemetery trust,

while R.C. 5812.46(B) requires trustees to pay certain taxes from principal. Although Crown Hill, in an effort to show no conflict exists, argues that "capital gains," as used in R.C. 1721.21(J)(2)(c), should mean the net amount of capital gains, after taxes, on the sale of appreciated property, we find that such a reading is unsupported by any explicit authority and relies too tenuously on cobbled dictionary definitions with no clear application to the circumstances here. Therefore, because the two statutes conflict, we must next determine which statute is the general provision and which is the special provision.

{¶ 19} We agree with the trial court that R.C. 5812.46(B) contains the more specific provision, and R.C. 1721.21(J)(2)(c) contains the more general provision. R.C. 5812.46(B) specifically addresses trust income taxes. R.C. 1721.21(J)(2)(c), however, only generally addresses the establishment, management, and operation of cemetery trusts. While R.C. 1721.21(J)(2)(c) contains a general statement that all principal and capital gains must remain in the cemetery trust, it does not address the specific issue of payment of taxes. R.C. 1721.21(J)(2)(c) does not even mention taxes. On the other hand, R.C. 5812.46(B) directives are narrowly tailored to instruct trustees to pay taxes based on receipts allocated to principal. Because R.C. 5812.46(B) addresses the more specific issue of payment of taxes from principal and R.C. 1721.21(J)(2)(c) only generally addresses principal and capital gains, R.C. 5812.46(B) contains the more specific statutory provision on the subject of trust taxes.

{¶ 20} Appellants' arguments are unpersuasive. Appellants assert that R.C. 1721.21(J)(2)(c) is the specific provision because it governs the withdrawal from cemetery trusts, whereas R.C. 5812.46(B) is general, in that it applies generally to all trusts. However, appellants frame the issue incorrectly. R.C. 1.51 directs the court to examine the conflicting "provisions," not the scope of the whole statutes. Although R.C. 5812.46(B) applies to "every trust" via R.C. 5812.52, our analysis for purposes of the present case must focus on the actual provisions that conflict. In this regard, R.C. 5812.46(B) specifically addresses the payment of taxes, which is at issue in this case. R.C. 1721.21(J)(2)(c) does not address the payment of taxes. Thus, whether the scope of the whole of R.C. 1721.21(J)(2)(c) is narrower overall because it concerns only cemetery trusts is irrelevant to the analysis under R.C. 1.51.

{¶ 21} Appellants also present arguments that urge requirements that are not reflected in the analysis set forth in R.C. 1.51. Appellants' assertion that R.C. 1721.21(J)(2)(c) should be construed as the more specific statute because finding R.C. 5812.46(B) to be the more specific statute would impliedly repeal R.C. 1721.21(J)(2)(c) in some of its application attempts to add a new test to R.C. 1.51. This consideration is nowhere in R.C. 1.51. Regardless, this argument could be made with any analysis under R.C. 1.51, as following one statutory provision over another conflicting statutory provision would necessarily render the second statutory provision impotent on the conflicting issue. Still, the later passage of R.C. 5812.46(B) more fittingly shows the General Assembly's intent to create an exception to the general provision in R.C. 1721.21(J)(2)(c), not the intent to abrogate that statute in its entirety. *See Springdale v. CSX Ry. Corp.*, 1st Dist. No. C-910757 (Oct. 7, 1992) (the General Assembly is presumed to have knowledge of prior legislation when it enacts subsequent legislation; thus, when two statutes conflict irreconcilably, the newer, more specific is deemed to be an exception to the older, general statute). Likewise, appellants' argument that R.C. 1721.21(J)(2)(c) is the more specific "statute" because it is established upon a nearer and more exact view of the subject at issue, cemetery trusts, is not part of the test in R.C. 1.51, which refers to conflicting "provisions." Even if we were to apply this argument, we believe R.C. 5812.46(B) is actually the provision that has the more exact view of the subject at issue, which is the payment of taxes from trust funds. R.C. 1721.21(J)(2)(c) does not address taxes. Therefore, we find these arguments unavailing.

{¶ 22} Furthermore, the exception in R.C. 1.51 that permits the general provision to prevail over the specific provision does not apply here. R.C. 1.51 permits the general provision to prevail over the specific provision when the general provision was adopted more recently than the specific provision and the General Assembly manifests an intent to have the general provision prevail over the specific provision. In the present case, R.C. 5812.46(B) was adopted more recently than R.C. 1721.21(J)(2)(c). R.C. 5812.46(B) took effect on January 1, 2007, while R.C. 1721.21(J)(2)(c) took effect on September 22, 2000. Thus, the exception in R.C. 1.51 cannot apply here.

{¶ 23} For these reasons, we find the trial court did not err when it held that R.C. 5812.46(B) permits Crown Hill, who is the owner and operator of a cemetery trust, to pay

capital gains taxes using the trust's principal. R.C. 5812.46(B) is the more specific and recently enacted provision. R.C. 5812.46(B) specifically refers to trust income taxes and how trusts must pay taxes based on receipts allocated to principal. R.C. 1721.21(J)(2)(c) only generally addresses cemetery trusts and does not include any provisions relating to taxes. Therefore, we find the trial court properly granted summary judgment in favor of Crown Hill. We overrule appellants' assignment of error.

{¶ 24} Accordingly, we overrule appellants' sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and KLATT, J., concur.

_____